UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

RALPH CREEL, )
 )  No.: 1:07-CV-61
　　　　*Plaintiff*, )
 )  Chief Judge Curtis L. Collier
v. )
 )
CITY OF CLEVELAND, TN, *et al*. )
 )
　　　　*Defendants*. )

## **MEMORANDUM**

Before the Court are motions for summary judgment (Court File Nos. 28, 30) and a motion to dismiss (Court File No. 32) filed by Defendants. Having reviewed the parties' briefs (Court File Nos. 31, 32, 33, 37, 38), the applicable law, and the evidence in this case, the Court will **GRANT** the summary judgment motions (Court File No. 28, 30).[1]

**I.    RELEVANT FACTS**

Plaintiff Ralph Creel was arrested by a City of Cleveland police officer in September 1994 and indicted for child rape. Prior to his trial in 1995, the district attorney's office for Bradley County dismissed the charges. On April 19, 1996, a state criminal court entered an order of expungement with respect to Plaintiff's police and criminal court records. Information relating to the case had appeared in a local newspaper and people in the community were aware of it.

In late 2005, Plaintiff became a candidate for constable, running against defendant Johnny

---

[1] Because the Court is considering evidence outside the complaint, the motion to dismiss will be **DENIED** (Court File No. 32), but the arguments presented in support of it have been considered.

Hicks, who was seeking re-election.[2] While Johnny Hicks was campaigning, he came to the home of defendant Gary Hicks, assistant chief of police for the Cleveland Police Department.[3] While the two men conversed about the election, Johnny Hicks asked Gary Hicks for potential police reports concerning Plaintiff. Gary Hicks talked with defendant Wes Snyder, Jr., the chief of police, who said the police department would have to produce all of its public records relating to the case.

The police records division produced to Gary Hicks a computer-generated offense report related to Plaintiff's 1994 arrest. The report noted that Plaintiff had been indicted but did not state the eventual resolution of his case. Gary Hicks called Johnny Hicks to tell him about the report, which he then brought to him. A few days later, Johnny Hicks called Gary Hicks to ask if the police department had any other reports about Plaintiff. No other reports were found. About a day later, Johnny Hicks came to the police department, where he met with Gary Hicks, Snyder, and the officer who originally investigated Plaintiff. After an additional search, they found the original case file, which contained copies of the offense report and arrest report, which were provided to Johnny Hicks. They did not find the expungement order at that time.

Prior to releasing the record, Hicks had another officer check with the records department, which reported back that it "could not locate an Expungement Order." Plaintiff infers from this statement that, "Obviously, the existence of the Expungement Order was known." Because of the difficulty finding records, Snyder had assumed the records were either taken away by someone or expunged by a court order.

---

[2]In the depositions for this case, Johnny Hicks is also referred to by his middle name, Dewayne.

[3]It is not clear if there is any familial relationship between Johnny Hicks and Gary Hicks.

Three days after releasing the records, a police official found the expungement order. He informed Gary Hicks, who called Johnny Hicks and told him he should not distribute or use any of the documents previously given to him. By that time, Johnny Hicks had distributed numerous copies of the documents, but he stopped distributing them when told of the expungement order. Gary Hicks also sent Johnny Hicks a letter instructing him to destroy the records previously provided.

Asserting claims under 42 U.S.C. § 1983, Plaintiff alleges the defendants violated his rights to substantive and procedural due process. He also alleges Gary Hicks and unknown John Does conspired to deny him his civil rights. Plaintiff also asserts Defendants committed the state law tort of invasion of privacy.

## II.  STANDARD OF REVIEW

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

First, the moving party must demonstrate no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). The Court views the evidence, including all reasonable inferences, in the light most favorable to the non-movant. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). However, the non-movant is not entitled to a trial based solely on its allegations, but must submit significant probative evidence to support its claims. *Celotex*, 477 U.S. at 324; *McLean v. Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). The moving party is entitled to summary judgment if the non-movant fails to

make a sufficient showing on an essential element for which it bears the burden of proof. *Celotex*, 477 U.S. at 323. In short, if the Court concludes a fair-minded jury could not return a verdict in favor of the non-movant based on the record, the Court may enter summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

## III. DISCUSSION

Defendants contend there is no constitutional claim, either for substantive or procedural due process, for releasing expunged criminal records. Plaintiff contends that Defendants promised to keep his highly sensitive criminal case confidential, but breached that promise by violating a state statute and court order.

### A. Substantive Due Process: Right to Privacy

The Fourteenth Amendment guarantees "due process of law" for any deprivation of "life, liberty, or property." U.S. Const. amend XIV § 1. This guarantee includes both procedural and substantive components. The substantive component protects two types of privacy rights, the relevant one here being a person's interest in "avoiding disclosure of personal matters." *Whalen v. Roe*, 429 U.S. 589, 599-600 (1977); *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1060 (6th Cir. 1998). However, there is no general constitutional right to nondisclosure of personal information. *J.P. v. DeSanti*, 653 F.2d 1080, 1091 (6th Cir. 1981). Rather, "any constitutional right to privacy must be restricted to those personal rights that can be deemed fundamental or implicit in the concept of ordered liberty." *Kallstrom*, 136 F.3d at 1062 (citing *DeSanti*, 653 F.2d at 1090) (quotation marks omitted).

4

"Nondisclosure of one's criminal record is not one of those personal rights that is 'fundamental' or 'implicit in the concept of ordered liberty.'" *Cline v. Rogers*, 87 F.3d 176, 179 (6th Cir. 1996); *see also Paul v. Davis*, 424 U.S. 693, 713 (1976) (no constitutional protection in dissemination of an "official act such as an arrest"); *Bailey v. City of Port Huron*, 507 F.3d 364, 369 (6th Cir. 2007) (same).

This case is slightly different in that Plaintiff's criminal record was subject to an expungement order. However, the United States Court of Appeals for the Sixth Circuit has held that juvenile court records, which like expunged criminal cases are supposed to be private pursuant to state law, do not warrant constitutional privacy protections. *DeSanti*, 653 F.2d at 1090. Although the Sixth Circuit has not dealt with the constitutional privacy implications of expunged criminal records, other federal appellate courts have found no constitutional right of privacy in such records. *Eagle v. Morgan*, 88 F.3d 620, 625 (8th Cir. 1996); *Nilson v. Layton*, 45 F.3d 369, 372 (10th Cir. 1995). In *Eagle* and *Nilson*, the courts expressly rejected contentions that state expungement laws can give rise to constitutional privacy rights. *Eagle*, 88 F.3d at 626; *Nilson*, 45 F.3d at 372. Relying on those cases, a district court in this circuit held a plaintiff's constitutional privacy rights were not implicated by the release of his expunged criminal records. *Villa v. Vill. of Elmore*, 2002 WL 31728970, 2002 U.S. Dist. LEXIS 23253 (N.D. Ohio Dec. 3, 2002).

Plaintiff argues his case is different because his criminal prosecution terminated in his favor. In contrast, in all the relevant cases, *Davis*, *Bailey*, *Cline*, *Eagle*, *Nilson*, and *Villa*, the information was disclosed about a person who was either facing pending charges, had been convicted, or had entered a plea of guilty or no contest. This is significant because criminal suspects have less of a privacy interest than people who are not suspects, *see Bailey*, 507 F.3d at 368, and Plaintiff was no

5

longer a suspect at the time of the disclosure. Although it is clear that government officials may "publicize a record of an official act" such as an arrest, *Bailey* 507 F.3d at 369 (quoting *Davis*, 424 U.S. at 713), there is no case law dealing with the disclosure of an arrest after the criminal defendant has won his case and had the arrest expunged.

But it is nevertheless clear the disclosure does not warrant constitutional protection. The arrest in this case was not the sort of private matter to which the Sixth Circuit has in the past extended constitutional privacy protection. *E.g.*, *Kalstrom*, 136 F.3d at 1059-62 (personal information of police officers who were subjected to "serious risk to [] personal safety" from a violent gang likely to seek revenge); *Bloch v. Ribar*, 156 F.3d 673, 686 (6th Cir. 1998) ("information regarding private sexual matters"). Rather than being a highly personal secret, the arrest of Plaintiff was reported in local media and people in Plaintiff's community knew about it. Regardless of whether a criminal prosecution ends favorably or unfavorably, criminal history is a matter of public record, and therefore it is not a private personal matter. *See Cline*, 87 F.3d at 179; *see also Nilson*, 45 F.3d at 372 ("Information readily available to the public is not protected by the constitutional right to privacy."). The Eighth and Tenth Circuits have noted how expunging a criminal record differs from expunging an incident itself:

> While [an expungement order] removes a particular arrest and/or conviction from an individual's criminal record, the underlying object of expungement remains public. Court records and police blotters permanently document the expunged incident, and those officials integrally involved retain knowledge of the event. An expunged arrest and/or conviction is never truly removed from the public record and thus is not entitled to privacy protection.

*Eagle*, 88 F.3d at 626 (quoting *Nilson*, 45 F.3d at 372).

Furthermore, at the time this information was released, Plaintiff was a candidate for elected office, specifically the position of constable, a law enforcement position. Running for elected office

diminishes an individual's privacy rights. *See Nation Magazine v. United States Customs Serv.*, 71 F.3d 885, 894 n.9 (D.C. Cir. 1995). As a practical matter, it is not surprising that information about the arrest of a candidate for public office–especially, a law enforcement position–would be released. That this disclosure may dissuade a candidate from running for office does not turn it into a substantive due process right. *McGee v. City of Warrensville Heights*, 16 F. Supp. 2d 837, 851 (N.D. Ohio 1998) (rejecting contention that "the privacy interests of political candidates is implicit in the concept of ordered liberty and should be protected under substantive due process").

Even if a constitutional right existed here, the individual defendants would be protected by their assertions of qualified immunity. Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." *Saucier v. Katz*, 533 U.S. 194, 205 (2001) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). Qualified immunity protects government officials from liability if they are performing discretionary functions as long as their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

The right must be "clearly established in a particularized sense" such that it is "clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Fox v. DeSoto*, 489 F.3d 227, 235 (6th Cir. 2007); *accord Saucier*, 533 U.S. at 202. Thus, officers who make "reasonable mistakes as to the legality of their actions" are entitled to qualified immunity. *Saucier*, 533 U.S. at 206 (noting that qualified immunity protects a police officer who "reasonably but mistakenly" concludes he has probable cause to make an arrest or who mistakenly believes the amount of force used against a suspect is reasonable).

There is no case, let alone binding precedent, holding that disclosure of an expunged criminal

7

record violates a constitutional privacy right. Plaintiff argues the right was nevertheless clearly established because the City violated a court order by not destroying its records and a reasonable police officer would not deliberately disobey a court order.

But there is no evidence Snyder or Gary Hicks deliberately violated any law. The evidence establishes that Gary Hicks had another officer check into the existence of an expungement order, and when none was found, Hicks released the information. Plaintiff's suggested inference, that Hicks asked about the existence of an expungement order because he knew one existed, is not reasonable. Plaintiff offers only speculation that Gary Hicks knew about the expungement order; knew that the order was missing; and asked another officer to look for the order while knowing that the officer would not be able to locate it. When the expungement order was subsequently found, Gary Hicks told Johnny Hicks to stop distributing the information and destroy it. With no evidence to the contrary, the only reasonable interpretation of the facts is that Gary Hicks did not know of the expungement order. Wes Snyder had also speculated there might be an expungement order, but there is no evidence he knew there was one. Thus, the evidence shows Snyder and Gary Hicks had a "reasonable but mistaken" understanding of the facts, which warrants qualified immunity because it was not "clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 553 U.S. at 206, 213.

B. **Procedural Due Process**

To succeed on a procedural due process claim, Plaintiffs must have been deprived without appropriate process of a liberty or property interest protected by the Fourteenth Amendment. *Hamilton v. Myers*, 281 F.3d 520, 529 (6th Cir. 2002); *Franklin v. Aycock*, 795 F.2d 1253, 1261 (6th Cir. 1986).

8

Johnny Hicks does not address procedural due process in his motion. Nevertheless, the Court concludes that as the person requesting records from the police department, he could not somehow be obligated to give certain process to Plaintiff. The other defendants do address procedural due process, but their argument rests on a Supreme Court case about *substantive* due process, *Collins v. City of Harker Heights*, 503 U.S. 115 (1992). The only mention of procedural due process in that case is, "Petitioner, however, does not advance a procedural due process claim in this case." *Id.* at 125. Nevertheless, it is clear Plaintiff cannot succeed on a procedural due process claim.

Plaintiff raises two arguments in support of his claim. First, he contends "the State," as a party to the original criminal case, violated Plaintiff's due process rights by disregarding the court order. Plaintiff cites no cases to support this contention. If the State of Tennessee, which is not even a party to this case, violated a state court order, the appropriate remedy is in state court.

Second, Plaintiff contends "the State" violated his procedural due process rights by depriving him of a constitutional right with no notice or opportunity to be heard. Again, it is not clear how "the State" was involved in actions by Cleveland police officials. The first step in a procedural due process claim is determining whether a plaintiff has a liberty or property interest entitled to due process protection. *See Mitchell v. Fankhauser*, 375 F.3d 477, 480 (6th Cir. 2004). Plaintiff acknowledges that right is not his reputation, because there is no liberty interest in one's reputation. *Davis*, 424 U.S. at 712. Instead, Plaintiff argue he satisfies the "stigma-plus" test. *Doe v. Mich. Dep't of State Police*, 490 F.3d 491, 501-02 (6th Cir. 2007) ("A successful plaintiff must therefore show that the state's action both damaged his or her reputation (the stigma) and that it 'deprived [him or her] of a right previously held under state law' (the plus).") (quoting *Davis*, 424 U.S. at 708).

Plaintiff argues the right he was deprived of was the confidentiality of his expunged records pursuant to a state court order and state statute. However, Plaintiff did not lose any tangible right. *See Ferencz v. Hairston*, 119 F.3d 1244, 1249 (6th Cir. 1997) (holding that as publication of defamatory comments complained of was not accompanied by the deprivation of any tangible interest such as continued employment, the publication did not deprive plaintiffs of a liberty interest). The loss of confidentiality is what caused Plaintiff's harm. It has not deprived him of any interests in employment, government benefits, a driver's license, a professional license, his freedom, or something else to which he has an entitlement. *Cf. Ambus v. Granite Bd. of Educ.*, 975 F.2d 1555, 1562 (10th Cir. 1992) (alleging procedural due process violation where release of expunged records led to loss of employment).

Even if Plaintiff satisfied the first step of a procedural due process analysis, he cannot satisfy the second step, which requires determining "what process is due." *Mitchell*, 375 F.3d at 480. The difficulty of a procedural due process analysis here is compounded because there is no process for releasing expunged records. This is not a situation where there should be such a process or where there is a process but it was not followed. It is not a situation where there could have been any procedures prior to the deprivation because the officers releasing the records did not realize they were violating the expungement order. *Cf. Parratt v. Taylor*, 451 U.S. 527 (1981) (reasoning that when a loss of property results from a random, unauthorized act by a state employee, the state cannot predict when the loss will occur and thus cannot provide predeprivation procedure). Pre-deprivation procedure is important where the property was lost by conduct pursuant to established state procedure. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422 (1982). Because the officers knowingly released the records but did not know there was an expungement order, the only proper procedure

10

could be post-deprivation. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984). The officers satisfied any post-deprivation process that was due by destroying the records and telling Johnny Hicks to do the same.

### C. State Tort Claim

Because Plaintiff's Tennessee claim is closely related to his federal claims, this Court could exercise supplemental jurisdiction under 28 U.S.C. § 1367. However, the Court may decline to exercise supplemental jurisdiction over the Tennessee claims if:

(1) the claim raises a novel or complex issue of State law,
(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
(3) the district court has dismissed all claims over which it has original jurisdiction, or
(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

§ 1367(c). The Court has dismissed all claims over which it has original jurisdiction. In addition, since the only remaining claim raises an issue of state law based on a tort recognized within the past decade, *West v. Media General Convergence, Inc.*, 53 S.W.3d 640 (Tenn. 2001), it would be better left for the state courts to handle.[4] Accordingly, the Court will **DECLINE** to exercise supplemental jurisdiction.

## IV. CONCLUSION

For the foregoing reasons, the Court will **GRANT** Defendants' motions for summary

---

[4]Although not raised by the parties, the Court notes that the First Amendment to the United States Constitution imposes an actual malice requirement on false light claims brought concerning matters of public concern, *Time, Inc. v. Hill*, 385 U.S. 374, 393 (1967), and for false speech about public figures, *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964).

judgment (Court File Nos. 28 & 30).

An Order shall enter.

/s/
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**